UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID ECK, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| JONATHAN NEAL, LAURIE BRADLEY-HARRINGTON, THOMAS KELLEY, and ROGER SILVA JR., *in their individual capacities*; and the TOWN OF KINGSTON, | * Civil Action No. 1:14-cv-13693-ADB |
| | * |
| Defendants. | * |

## MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT

BURROUGHS, D.J.

Plaintiff David Eck brings this case pursuant to 42 U.S.C. § 1983, the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, § 11H, 11I, and the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. Laws ch. 258, asserting various civil rights violations and torts claims against four individual police officers, Jonathan Neal, Laurie Bradley-Harrington, Thomas Kelley, and Roger Silva, Jr., and their employer, the Town of Kingston ("the Town"). Now pending before this Court is Defendants' Motion for Partial Summary Judgment [ECF No. 39] as to certain § 1983, MCRA, and tort claims (Counts I, III, and IV–VI). For the reasons set forth below, the motion is granted in part and denied in part.

I. **BACKGROUND**

The following facts are drawn from the statements of undisputed material facts and responses [ECF Nos. 41, 47, 52] unless otherwise noted. Where the facts are disputed, the Court

views the record in the light most favorable to Eck, the non-moving party.[1] See Mariasch v. Gillette Co., 521 F.3d 68, 70 (1st Cir. 2008).

Eck lives in Kingston, Massachusetts, and owns and operates a restaurant equipment business located on private property in Kingston. [ECF No. 42 ¶¶ 1, 7]. On April 30, 2012, Defendant Officers Bradley-Harrington and Neal, police officers for the Town of Kingston Police Department, were dispatched to Eck's business in response to a 911 call placed by one of Eck's customers. [ECF No. 52 ¶¶ 1, 9–10]. Upon their arrival, the customer told Officers Bradley-Harrington and Neal that she and Eck had gotten into an altercation concerning store credit and that he had threatened to kill her. Id. ¶¶ 11, 14–16. Officer Bradley-Harrington told the customer that they would speak to Eck. Id. ¶¶ 18–19. Eck stated that he directed the officers to leave his property, but they refused to do so. Id. ¶ 19A. Eck then told Officers Bradley-Harrington and Neal, "[g]et the fuck off my property. I don't want a Patrolman, I want a Deputy Supervisor." Id. ¶ 23. Eck stated that at this point, Officer Neal said, "I've had enough of your shit" and then he "charged" and "attacked" Eck. Id. ¶¶ 19A, 23B. Eck asserted that Officer Neal jumped on him and slammed him against the wall. Id. ¶¶ 30A, 31A. A witness, Stuart Dewilde, stated that Eck was "stiff [with] his arms straight down" when Officers Bradley-Harrington and Neal placed Eck under arrest. Id. ¶ 25A. Dewilde also reported that during the arrest, Officer Bradley-Harrington pulled out a can of mace and threatened to use it against Eck if he tried to resist. Id. ¶ 25A. Eck's son, who also witnessed the incident, said that Eck put his hands behind

---

[1] Defendants repeatedly assert throughout the statement of material facts [ECF No. 52] that where Eck has failed to cite to material in the record to support his allegations, he has failed to establish a genuine dispute of fact under Federal Rule of Civil Procedure 56(3). This, however, is not an accurate statement of the Rule, which reads "[t]he court need consider only the cited materials, *but it may consider other materials in the record*." Fed. R. Civ. P. 56(c)(3) (emphasis added). As such, where the record supports Eck's factual allegations, such facts are included herein, regardless of whether Eck provided appropriate citation in his briefing.

his back as Officer Neal physically held him to place him under arrest. [ECF No. 42-4 at 39–40]. Eck asserted that the process of handcuffing him took only "a couple of seconds." [ECF No. 52 ¶ 32A].

As Eck was escorted to the police cruiser by Officers Bradley-Harrington and Neal, Eck's son informed them that Eck had recently had a heart attack and a stroke. [ECF No. 52 ¶ 36]. It is undisputed that Eck suffered a stroke in January of 2012 and was hospitalized for several weeks, a few months prior to the incident. Id. ¶ 37. Eck stated that when they got to the cruiser, Officer Neal wanted him to step into the vehicle, which he was unable to do because of his recent stroke. Id. ¶ 38A. Eck said that he told Officer Neal this, and that in response Officer Neal "slammed" him into the open door of the cruiser. Id. ¶ 38A. Eck further stated that Officer Neal then "threw [him] in head first on the floor of the cruiser." Id. ¶ 41A. Eck's son made a 911 call to alert the dispatcher that "they had an incident going on" between his father and the officers, and he held the phone up close to his father to try to capture his father's moans of pain. Id. ¶ 48A; [ECF No. 42-4 at 31]. It is undisputed that Eck was lying on the floor of the cruiser "where the hump is" when the cruiser arrived at the police station. [ECF No. 52 ¶ 42B].

While Officer Neal transported Eck to the police station, Officer Bradley-Harrington remained on the scene to speak with witnesses about the incident. Id. ¶ 44. Eck's son stated that when he asked Officer Bradley-Harrington why they had treated his father that way, she responded, "[w]e're sick of your shit. Your whole family is fucked up." Id. ¶ 46A. Dewilde stated that he heard this conversation, and he reported that Bradley-Harrington added, "[y]ou want to know why your father's in the back of that cruiser? It's because he's fucking crazy. In fact, your whole family is fucking crazy." Id. ¶ 46B; [ECF No. 47-2 at 17].

Prior to this incident, Eck had filed numerous grievances and complaints against several

3

Kingston Police officers, including against Officer Neal. [ECF No. 52 ¶ 8A]. These incidents were investigated, and in at least one case an involved officer received a reprimand for his conduct. [ECF No. 47-3 at 2, 7, 8, 13, 17, 24]. Specifically, Eck had complained that Officer Neal's conduct was "unprofessional and arrogant" and that he had made "three [previous] separate threats of arrest" against Eck. [ECF No. 52 ¶ 8B]. Eck described Neal as "part of the problem at Kingston Police Station." Id. ¶ 8B.

Eck also alleges that he suffered an additional assault at the hands of Officers Neal, Kelly, and Silva once he arrived at the Kingston Police Station. Id. ¶¶ 48B, 53. Because Defendants do not move for summary judgment on the allegations related to this second alleged incident, the Court will not address that incident at this time.

Eck filed the Complaint on September 24, 2014, which contains six counts: § 1983 claims for civil rights violations against the defendant police officers (Counts I and II), a claim for MCRA violations against the defendant police officers (Count III), a malicious prosecution tort claim against Defendants Neal and Bradley-Harrington (Count IV), an assault and battery tort claim against all Defendant Police Officers (Count V), and a § 1983 Monell claim against the Defendant Town (Count VI). Defendants have now moved for summary judgment on Counts I, III, IV, V, and VI.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the

fact either way." Id. "To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015). Once the movant takes the position that the record fails to make out any trialworthy question of material fact, "it is the burden of the nonmoving party to proffer facts sufficient to rebut the movant's assertions." Nansamba v. North Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013) (citation omitted).

The Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6. "This standard is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). The court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "[T]he judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Burns v. Johnson, 829 F.3d 1, 8 (1st Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)) (alteration in original).

## III. DISCUSSION

### a. Count 1: § 1983 Claim Against Officers Bradley-Harrington and Neal

In Count I, Eck advances three theories of liability: that he was arrested without probable cause; that the officers used excessive force when arresting him; and that the arrest violated his right to free speech.

#### i. Motion for Judgment on Due Process Grounds

Defendants first argue that they are entitled to summary judgment as to Count I because a

5

plaintiff may not bring a Fourteenth Amendment due process claim where an adequate state law remedy is available, but it is clear from the complaint and Eck's brief that he is *not* bringing a Fourteenth Amendment due process claim. Rather, he alleges that he was arrested without probable cause and with excessive force in violation of the Fourth Amendment. See Manuel v. City of Joliet, III, 137 S.Ct. 911, 917–18 (2017) ("[The Fourth Amendment], standing alone, guarantee[s] 'a fair and reliable determination of probable cause as a condition for any significant pretrial restraint.'" (internal citations omitted)); Graham v. Connor, 490 U.S. 386, 395 (1989) ("[A]*ll* claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment . . . ."). Furthermore, even if Eck were asserting a due process claim, a substantive due process claim may be brought where a state law remedy exists. See Reid v. N.H., 56 F.3d 332, 336 n.8 (1st Cir. 1995) (noting that adequate state-law remedy precludes *procedural* due process claim under § 1983 (emphasis added)); Miga v. City of Holyoke, 497 N.E.2d 1, 8 (Mass. 1986) ("Because the plaintiff alleges a violation of the decedent's right to *substantive* due process under the Fourteenth Amendment, her claim under 42 U.S.C. § 1983 is not barred by the availability of a remedy for wrongful death under [state law]." (emphasis added)). Accordingly, Defendants are not entitled to summary judgment on this basis.

    ii.  Excessive Force During Arrest

Next, Defendants move for summary judgment as to Eck's claim that he was arrested with excessive force in violation of the Fourth Amendment. In analyzing whether a police officer used excessive force during an arrest, the "pertinent question is whether the force used was 'objectively reasonable' under all the circumstances; that is, whether it was consistent with the amount of force that a reasonable police officer would think necessary to bring the arrestee into

6

custody." Gaudreault v. Municipality of Salem, 923 F.2d 203, 205 (1st Cir. 1990). An excessive use of force claim will succeed if it can be shown that a defendant "employed force that was unreasonable under all the circumstances." Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009) (citing Graham, 490 U.S. at 396). Relevant to this inquiry are the "reasonableness factors" set forth in Graham, 490 U.S. at 396: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." At the summary judgment stage, "the court [is] bound to ask . . . whether under the plaintiff's version of the facts a reasonable officer should have known that the degree of force was plainly excessive." Morelli, 552 F.3d at 25.

The supported facts relevant to this inquiry, viewed in the light most favorable to Eck, are as follows. Eck claims that he was slammed against the wall by Officer Neal as he was being handcuffed. He further alleges that Officer Neal slammed him into the police cruiser door and threw him head first onto the floor of the police cruiser when he did not immediately comply with his instructions to enter the vehicle, despite the fact that the officers were aware that Eck had recently had a stroke.

While the charged offenses of assault and assault and battery on a police officer are relatively serious, thus implicating the first Graham reasonableness factor, under Eck's version of the facts, he did not pose an immediate threat to the safety of the officers or others when he was allegedly slammed into the police cruiser door and thrown inside, because, by that point, he had already been handcuffed. Moreover, Eck claims that he was not resisting arrest or attempting to flee when he failed to comply with Officer Neal's orders, but rather was unable to get into the cruiser on his own due to his recent stroke. Combined, these factors appear to suggest that only a relatively limited amount of force would have been reasonable in the circumstances of Eck's

7

arrest. See Morelli, 552 F.3d at 24 (explaining that petty theft of less than $20, compounded by the absence of either dangerousness or attempted flight, could render excessive the force the officer used, precluding summary judgment). At least one court has allowed a claim for excessive force to proceed on facts similar to those of the present case. See Comfort v. Town of Pittsfield, 924 F. Supp. 1219, 1228–29 (D. Me. 1996) (holding that a reasonable jury could find that defendants used excessive force during arrest when they "ramm[ed] a subdued and handcuffed suspect's head into a door jam," and thus denying summary judgment). Where Officer Neal disputes that he slammed Eck's head into the cruiser door or threw him into the cruiser head first, there exists a genuine dispute of material fact, precluding summary judgment. The motion for summary judgment on the excessive force claim against Officer Neal is therefore denied.

As to Officer Bradley-Harrington, there is no allegation that she was involved in the altercation described above, apart from the claim that she pointed—but did not discharge—a can of mace at Eck's face as he was being handcuffed by Officer Neal. Briefly pointing a can of mace at Eck, without more, is not enough to support a claim for excessive force. See Wilkinson v. Slankard, No. CV 1-08-1494-CKJ, 2009 WL 1586946, at *2 (E.D. Cal. June 5, 2009) ("mere fact" that defendant "pointed the pepper spray can at plaintiff does not equate to excessive force"); cf. Noe v. W. Virginia, No. 3:10-CV-38, 2010 WL 3025561, at *7 (N.D.W. Va. July 29, 2010) ("merely pointing a taser at the plaintiff cannot support a claim for excessive force"). Therefore, the Court grants summary judgment as to Eck's Fourth Amendment excessive force claim against Officer Bradley-Harrington.

    iii.  Qualified Immunity As To Arrest Without Probable Cause

Defendants also argue that they are entitled to qualified immunity as to Eck's claim that

he was arrested without probable cause. To determine whether a police officer is entitled to qualified immunity, the Court must ask "whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir. 1995) (quoting McBride v. Taylor, 924 F.2d 386, 389 (1st Cir. 1991)). Eck asserts that Defendants' argument in favor of qualified immunity depends on whether Officers Neal and Bradley-Harrington had probable cause to arrest him, see [ECF No. 46 at 7], but a police officer is entitled to qualified immunity even if he or she mistakenly, but reasonably, believed he or she had probable cause to arrest. Hegarty v. Somerset County, 53 F.3d 1367, 1373 (1st Cir. 1995) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)).

To determine whether a defendant violated clearly established rights of which a reasonable person would have known, the Court must examine

> (i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right.

Cox v. Hainey, 391 F.3d 25, 29–30 (1st Cir. 2004) (citing Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004).

As to the first prong, "[t]he Fourth Amendment undoubtedly recognizes the right to be free from unreasonable seizures of the person." Cox, 391 F.3d at 30. Secondly, "[t]he right to be free from arrest without constitutionally adequate probable cause is clearly established." Id.

As to the third prong, while Eck denies having threatened to kill the customer, he does not dispute that the customer told Officers Neal and Bradley-Harrington about the alleged threat, and he concedes that the customer was "shaking and crying." [ECF No. 47 ¶ 12]. This

information was sufficient for reasonable officers to believe they had probable cause to arrest Eck for disorderly conduct.[2] See Nolan v. Krajcik, 384 F. Supp. 2d 447, 466 (D. Mass. 2005) (holding that plaintiff's statement in a town hall to "come on down and make me sit down," combined with other expletive-ridden language, could result in an objectively reasonable officer believing he had probable cause to arrest for disorderly conduct, and granting qualified immunity to arresting officers on those grounds).[3] Thus, Defendants are entitled to qualified immunity as to the claim for arrest without probable cause.[4]

      iv.      Qualified Immunity As To Excessive Force

Next, Officer Neal argues he is entitled to qualified immunity as to the excessive force claim because he used a reasonable amount of force. To evaluate Neal's claim, the Court employs the same standard and three-part test discussed *supra*. See Lowinger, 50 F.3d at 65; Cox, 391 F.3d at 29–30.

As to the first prong, whether the plaintiff's allegations establish a constitutional violation, Eck alleges that he was already handcuffed and being escorted to the police cruiser when Officer Neal "slammed" him into the police cruiser door and threw him headfirst into the cruiser, even with the knowledge that Eck had recently suffered a stroke. Eck claims he was not

---

[2] Under Massachusetts law, an individual is guilty of disorderly conduct if that person, "with purpose to cause public inconvenience, annoyance, or alarm, or recklessly causing a risk thereof," either "(a) engages in fighting or threatening, or in violent or tumultuous behavior," or "(c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." Nuon v. City of Lowell, 768 F. Supp. 2d 323, 330 (D. Mass. 2011) (quoting relevant portion of Model Penal Code § 250.2).

[3] Even though the threat occurred on private property, "[t]he public element [of the disorderly conduct statute] may be satisfied where the actor's conduct takes place on private property that is frequented by the public, such as stores, apartment houses, or theaters." Commonwealth v. Mulvey, 784 N.E.2d 1138, 1142 (Mass. App. Ct. 2003).

[4] The Court need only find that probable cause existed as to one of the offenses for which Eck was arrested. See LaFrenier v. Kiniery, 478 F. Supp. 2d 126, 136 (D. Mass. 2007) ("[P]robable cause need only exist as to *any* offense that *could be* charged under the circumstances." (quoting United States v. Bizier, 111 F.3d 214, 219 (1st Cir. 1997)).

10

resisting, and did not pose a threat to the safety of the officer or any others. A rational jury considering these facts could determine that the force Officer Neal used was excessive. See Comfort, 924 F. Supp. at 1228 ("'ramm[ing]' a subdued handcuffed suspect's head into a door jam" constitutes excessive force); see also Morelli, 552 F.3d 12, 23 (1st Cir. 2009) (considering the circumstances of the arrest, whether the plaintiff was resisting or fleeing, and whether plaintiff posed a threat as important factors in determining whether force used was excessive).

As to the second prong, whether the constitutional right was clearly established, "[o]ur case law supplies a crystal clear articulation of the right, grounded in the Fourth Amendment, to be free from the use of excessive force by an arresting officer." Morelli, 552 F.3d at 23 (citing Alexis v. McDonald's Rests. of Mass., Inc., 67 F.3d 341, 353–54 (1st Cir. 1995)).

The inquiry into the third prong, whether a reasonable officer would have understood his or her conduct to violate the constitutional right at issue, is "a complicated one." Morelli, 552 F.3d at 23. In Morelli, the court noted the inherent difficulty in evaluating a claim of qualified immunity in the context of a claim for use of excessive force:

> By definition, excessive force is unreasonable force. But reasonable people sometimes make mistaken judgments, and a reasonable officer sometimes may use unreasonable force. In that event, qualified immunity gives an officer the benefit of a margin of error . . . Looked at another way, qualified immunity is appropriate in an excessive force case when an officer "correctly perceive[s] all of the relevant facts but [has] a mistaken understanding" as to the legality of his chosen level of force. Conversely, qualified immunity protection would not be available when the level of force chosen by the officer cannot in any way, shape, or form be justified under those facts.

Id. (internal citation omitted).

Here, as Eck describes the encounter, Officer Neal used an unjustifiable amount of force, rising to the level of excessive force. It is not objectively reasonable for an officer to "slam" a subdued and handcuffed arrestee, who is not resisting arrest, into a police cruiser door and throw

him headfirst onto the floor of a vehicle, particularly when the officer knows the arrestee has recently suffered a stroke. See Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993) (holding that handcuffing 67-year-old man who had recently suffered from a stroke so tightly that he had pain and bruises on his wrists for several weeks was objectively unreasonable, and holding that arresting officers did not have qualified immunity); Comfort, 924 F. Supp. at 1228; see also Alexis, 67 F.3d at 353 (dragging arrestee from a restaurant booth across the table with sufficient force to bruise her legs, handcuffing her, and dragging her to a police cruiser and pushing her inside was not objectively reasonable, and officers were not entitled to qualified immunity). Here, the alleged conduct is not on the "hazy border" of reasonable conduct that would be afforded qualified immunity. Morelli, 552 F.3d at 24. Thus, Officer Neal is not entitled to qualified immunity on these facts.

v. Retaliatory Arrest in Violation of the First Amendment

Eck's final claim as to Count I is that Officers Neal and Bradley-Harrington violated his First Amendment right to free speech when they arrested him without probable cause and with excessive force. While the briefing is somewhat muddled on this issue, it is clear that Defendants did not raise the First Amendment argument as grounds for dismissal of Count I in their opening memorandum [ECF No. 40]. Defendants did raise the First Amendment argument in their reply brief [ECF No. 56]. Thus, any argument for dismissal of Eck's Count I First Amendment claim is waived. See Noonan v. Wonderland Greyhound Park Realty LLC, 723 F. Supp. 2d 298, 349 (D. Mass. 2010) ("The purpose of a reply memorandum is not to file new arguments that could have been raised in a supporting memorandum." (citing Wills v. Brown University, 184 F.3d 20, 27 (1st Cir. 1999)); United States v. Brennan, 994 F.2d 918, 922 n.7 ("[I]t is well settled that a

legal argument made for the first time in a [party's] reply brief comes too late and need not be addressed." (internal quotations and citations omitted)).

> b. **Count III: Massachusetts Civil Rights Act Claim Against All Individual Defendants[5]**

The MCRA creates a cause of action for individuals to challenge interference with the exercise of a constitutional right which has been accomplished by "threats, intimidation, or coercion." Mass. Gen. Laws ch. 12, § 11H, 11I. These terms are defined as follows:

> "[t]hreat" in this context involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm . . . "Intimidation" involves putting in fear for the purpose of compelling or deterring conduct . . . [And] coercion . . . [is] the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.

Planned Parenthood League of Mass., Inc. v. Blake, 631 N.E.2d 985, 990 (Mass. 1994) (internal citations omitted).

"A direct violation of a person's rights does not, by itself, involve threats, intimidation, or coercion and thus does not implicate the [MCRA]." Longval v. Commissioner of Correction, 535 N.E.2d 588, 593 (Mass. 1989). "If, however, direct action also includes threats against, or intimidation or coercion of, a particular individual or individuals, liability under the MCRA can be established, and will be established if such threats, intimidation, or coercion interfered with that individual's exercise or enjoyment of rights secured by law." Planned Parenthood, 631

---

[5] Eck brings this claim against all individual Defendants in his complaint, see [ECF No. 1 ¶¶ 51–54], but his opposition brief only alleges that Officers Neal and Bradley-Harrington violated his rights under the MCRA. See [ECF No. 46 at 10]. Defendants, however, moved for summary judgment on all MCRA claims against all individual Defendants. See [ECF No. 40 at 1]. Thus, because Eck failed to respond to Defendants' argument as to the MCRA liability of Officers Kelley or Silva, these arguments are waived, and summary judgment is granted as to those Defendants on Count III. See Mahmoud v. Jacques, No. 2:14 –cv–255–JHR, 2016 WL 1734076, at *7 (D. Me. Ap. 29, 2016) ("[A] failure to respond to a movant's bid for summary judgment on certain claims is, in itself, a basis on which to grant summary judgment as to those issues." (internal citations omitted)).

13

N.E.2d at 989 (holding that MCRA claims brought by abortion clinic against protestors blocking clinic entrance survived because conduct itself was threatening, intimidating, or coercive and interfered with patients' exercise of legal right to access abortion). Even unlawful conduct is not enough to constitute "threats, intimidation, or coercion" where "all it does is take someone's rights away directly." Longval, 535 N.E.2d at 593. When a MCRA claim is asserted alongside a claim for relief under § 1983, plaintiff must "establish threats coercion, or intimidation *in addition* to a constitutional violation." Santiago v. Keyes, 890 F. Supp. 2d 149, 156 (D. Mass. 2012).

Eck alleges that Defendants violated the MCRA by arresting him in retaliation for exercising his First Amendment rights. Specifically, he claims that the officers arrested him in part because he asked them to leave his property and requested a supervisor, and also due to his previous complaints filed with the Kingston Police Department. To prove a violation of the MCRA, however, Eck must demonstrate that Defendants used the arrest or the threat of arrest to prevent him from exercising his free speech rights in the future, not merely to retaliate against him for previous statements. See Barbosa v. Conlong, 962 F. Supp. 2d 316, 332 (D. Mass. 2013) (explaining that, although "arrest and detention is intrinsically coercive for MCRA purposes, there still must be some allegation that the defendant's conduct was intended to coerce [the plaintiffs] into refraining from the exercise of a right or privilege secured by law" (internal citation omitted)); Turkowitz v. Town of Providence, 914 F. Supp. 2d 62, 76–77 (D. Mass 2012) (holding MCRA not violated where officers arrested plaintiff after he made "inflammatory" remarks over P.A. system, because there was no allegation that arrest was intended to coerce plaintiff from *further* exercise of his rights); cf. Cocroft v. Smith, 95 F. Supp. 3d 119, 129 (D. Mass. 2015) (upholding jury verdict finding violation of MCRA where jury could have

14

determined that officer threatened to arrest plaintiff if she said anything else); Damon v. Hukowicz, 964 F. Supp. 2d 120, 150-151 (D. Mass. 2013) (holding that threat of future arrest of cyclist if he rode in middle of traffic lane again could constitute MCRA violation for interference with constitutional right to travel).

Here, the record does not show that "[defendants], in the course of the arrest, threatened, intimidated, or coerced [Eck] to give up something that he has the constitutional right to do." Keyes, 890 F. Supp. 2d at 154. Eck does not allege that Officers Neal or Bradley-Harrington threatened to arrest him unless he refrained from directing speech at them before they actually conducted the arrest. Although the record does show that Eck reported to the Kingston Police Department in 2009 that Officer Neal had previously made "three separate threats of arrest" against him, see [ECF No. 47–3 at 14], it is not clear that these were threats intended to coerce Eck not to exercise his right to free speech or any other constitutionally protected right in the future. Accordingly, Officers Neal and Bradley-Harrington are entitled to summary judgment on the MCRA claims.

      c.      **Counts IV and V: Intentional Tort Claims Against All Individual Defendants**

Defendants assert that Eck's intentional tort claims against Officers Neal, Bradley-Harrington, Kelley, and Silva fail as a matter of law because Eck sued the defendants in their official capacities.[6] Defendants appear to have misread the complaint, however, because Eck clearly articulates in both the case caption and party descriptions that he brings his claims against the police officer defendants in their individual capacities. See [ECF No. 1 at 1, ¶¶ 5–8]. Accordingly, Defendants are not entitled to summary judgment on this basis.

---

[6] Defendants do not argue for summary judgment on the merits of Eck's malicious prosecution, assault, and battery claims; as such, the Court does not address the merits of those claims here.

### d. Count VI: Monell Claim Against the Town of Kingston

Finally, Defendants argue that they entitled to summary judgment on Eck's Monell claim against the Town. Under Monell, a plaintiff may bring a § 1983 claim against a local government entity "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [on the plaintiff]." Monell v. Dept. of Social Servs. of N.Y., 436 U.S. 658, 694 (1978). The plaintiff must demonstrate "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). The allegations must "allow for an inference that the [municipality] encouraged, condoned or acquiesced in violations of citizens' constitutional rights." Tambolleo v. Town of West Boylston, 613 N.E.2d 127, 130 (Mass. App. Ct. 1993).

First, Eck asserts that he can bring a Monell claim based on the Town's alleged failure to discipline its police officers. "In order to establish liability under a failure to discipline theory, the plaintiff must show a *persistent failure to discipline* that demonstrates the existence of a custom or policy of [a city]." Barker v. City of Bos., 795 F. Supp. 2d 117, 124 (D. Mass. 2011) (emphasis added). The Court "cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability." Tambolleo, 613 N.E.2d at 130 (citation omitted); see also Barker, 795 F. Supp. 2d at 124 (same). Eck argues that the Town's failure to discipline its officers, particularly Officer Neal, despite his repeated complaints to the Town about Officer Neal's and other officers' conduct, is sufficient to establish liability. Even after extensive discovery, however, Eck does not point to any evidence in the record that establishes a custom or policy of failing to discipline officers. In fact, evidence submitted and cited to by Eck establishes that his previous complaints about officers employed by the Town

16

were taken seriously, with the Town conducting multiple investigations, and reprimanding officers involved in the previous incidents reported by Eck when appropriate. See [ECF No. 47–3 at 2, 7, 8, 13, 17, 24]. Thus, Eck's claim for failure to discipline cannot survive. See Barker, 795 F. Supp. 2d at 124–25 (granting motion to dismiss where plaintiff failed to allege a pattern in which police officers used excessive force but were not disciplined, and holding that "it would be unwarranted speculation to infer that lax investigations created a policy of condoning the excessive use of force"); see also Santiago v. Fenton, 891 F.2d 373, 382 (1st Cir. 1989) (upholding summary judgment for defendants where plaintiff did not offer evidence of a "widespread" failure to discipline).

Next, Eck argues that the Town failed to adequately train its officers. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton, 489 U.S. at 389. "[A] training program must be quite deficient in order for the deliberate indifference standard to be met." Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 27 (1st Cir. 2005). Eck appears to base his argument on the fact that Officer Bradley-Harington admitted she did not have specific training on how to enter private property. See [ECF No.42–7 at 29]. This claim is insufficient, however, because Eck has not explained how his injuries could have resulted from Officer Bradley-Harrington's alleged unlawful entry; rather, the constitutional violations alleged are arrest without probable cause, arrest with excessive force, and a violation of the First Amendment. See City of Canton, 489 U.S. at 391 ("[F]or liability to attach . . . the identified deficiency in the city's training program must be closely related to the ultimate injury . . . Would the injury have been avoided had the employee been trained under a program that was not

deficient in the identified respect?"). Furthermore, even if Eck could demonstrate that his injury was closely related to an allegation of unlawful entry, he has not pointed to anything in the record which establishes that the Town engaged in inadequate training which resulted in a pattern of constitutional violations. See Calvi v. Knox Cty., 470 F.3d 422, 429 (1st Cir. 2006) ("Showing that a single individual received inadequate training is insufficient for municipal liability to attach; the training program as a whole must be found faulty."); Kibbe v. City of Springfield, 777 F.2d 801, 805 (1st Cir. 1985) (explaining that a "'single incident' of police misconduct does not, standing alone, permit an inference of a policy of inadequate training" (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985))).[7] Thus, Eck cannot succeed on his second asserted ground for Monell liability, and defendants are entitled to summary judgment on Count VI.

## III. CONCLUSION

Accordingly, the Court GRANTS Defendants' Motion for Partial Summary Judgment [ECF No. 39] in part and DENIES in part, as follows:

1) Summary judgment is GRANTED on Count I as to the arrest without probable cause claim against both Officer Neal and Officer Bradley-Harrington;

2) Summary judgment is GRANTED on Count I as to the excessive force claim against Officer Bradley-Harrington but DENIED as to the excessive force claim against Officer Neal;

---

[7] While courts have recognized that, in a "narrow[] range of circumstances a plaintiff may establish 'deliberate indifference' based upon a single incident of misconduct, where the municipality's failure could have avoided a 'highly predictable consequence' that was 'so patently obvious' that it could be liable without proof of a preexisting pattern of violations," Sonia v. Town of Brookline, 914 F. Supp. 2d 36, 44 (D. Mass. 2012), Eck has not made such a showing here.

18

3) Summary judgment is <u>DENIED</u> on Count I as to the claim for retaliatory arrest in violation of First Amendment claim against Officers Neal and Bradley-Harrington;

4) Summary judgment is <u>GRANTED</u> on Count III (Massachusetts Civil Rights Act claims against all individual Defendants);

5) Summary judgment is <u>DENIED</u> on Counts IV and V (intentional tort claims against all individual Defendants); and

6) Summary judgment is <u>GRANTED</u> on Count VI (<u>Monell</u> claim against the Town).

**SO ORDERED.**

September 29, 2017 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE